1

2

3

4                         UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7 UNITED STATES,                     Case No.  14-cr-00316-VC-1

            Plaintiff,

8

      v.

9                                     **ORDER DENYING MOTION TO**
                                    **DISMISS COUNTS THREE AND FOUR**

RYAN KELLY CHAMBERLAIN,       **OF THE SECOND SUPERSEDING**

10                                       **INDICTMENT**

            Defendant.

11                                       Re: Dkt. No. 102

12

13       Defendant Ryan Kelly Chamberlain has been charged with one count of possession of an

14 unregistered destructive device, in violation of 26 U.S.C. § 5861(d); one count of possession of a

15 firearm with the serial number removed, in violation of 18 U.S.C. § 922(k); one count of

16 possession of a biological toxin for use as a weapon, in violation of 18 U.S.C. § 175(a); and one

17 count of possession of a toxin, in violation of 18 U.S.C. § 175(b).  Chamberlain moves to dismiss

18 counts three and four of the second superseding indictment, i.e. the charges under 18 U.S.C. §§

19 175(a) and (b), on the grounds that: (1) sections 175(a) and (b) are unconstitutionally vague on

20 their face and as applied; (2) Congress exceeded its authority in enacting section 175(b); and (3)

21 Chamberlain's prosecution under sections 175(a) and (b) violates *Bond v. United States*, 134 S. Ct.

22 2077 (2014).  Chamberlain's motion is denied.

23                                        **I.**

24       The Fifth Amendment does not permit the conviction of a defendant under a criminal

25 statute "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so

26 standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556

27 (2015) (citing *Kolender v. Lawson,* 461 U.S. 352, 357-358 (1983)).  But a person "'who engages in

28 some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the conduct of others.'"  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (quoting

2   *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982)).  For that

3   reason, in evaluating a vagueness challenge to a law that does not implicate the First Amendment,

4   a court must consider only "whether a statute is vague as applied to the particular facts at issue."

5   *Id.* at 18; *see also United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("[V]agueness challenges to

6   statutes which do not involve First Amendment freedoms must be examined in the light of the

7   facts of the case at hand.").  This is an objective standard: the question is whether a person of

8   ordinary intelligence would have had fair notice that the conduct alleged was proscribed by the

9   statute, not whether the defendant himself had actual notice of the illegality of his conduct.  *See*

10   *Humanitarian Law Project*, 561 U.S. at 20-21.

11          There could well be prosecutions under either subsection that would present serious

12   vagueness issues.  In particular, section 175(b) has language that's difficult to understand.  But as

13   applied to this case, section 175(b) gives a person of ordinary intelligence fair notice that it is

14   illegal to knowingly possess as many as two thousand lethal doses of abrin in the form of crushed

15   rosary pea powder without a peaceful purpose, as the government alleges Chamberlain did.  *See*

16   *Johnson*, 135 S. Ct. at 2556; § 175(b).  And section 175(a) gives a person of ordinary intelligence

17   fair notice that it is illegal to possess abrin for use as a weapon, as, again, the government alleges

18   Chamberlain did.  *See Johnson*, 135 S. Ct. at 2556; § 175(a).  Nor has Chamberlain shown that

19   either subsection seriously "encourages arbitrary or discriminatory enforcement" against a

20   particular group or groups of people.  *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1156 (9th

21   Cir. 2014); *cf. id.* (striking down a city ordinance that applied to all drivers but was selectively

22   enforced against the homeless).  Sections 175(a) and 175(b) are therefore not unconstitutionally

23   vague as applied to Chamberlain's alleged conduct.

24                                               **II.**

25          "The Federal Government . . . 'can exercise only the powers granted to it,' including the

26   power to make 'all Laws which shall be necessary and proper for carrying into Execution' the

27   enumerated powers."  *Bond*, 134 S. Ct. at 2086 (quoting *McCulloch v. Maryland*, 4 Wheat. 316,

28   405 (1819); U.S. Const., Art. I, § 8, cl. 18).  Congress has the power to make laws "necessary and

2

1    proper" for carrying into execution the federal government's enumerated "power to make treaties."

2    *Id.* at 2087 (citing U.S. Const., Art. II, § 2, cl. 2).

3    As Chamberlain recognizes, 18 U.S.C. §§ 175(a) and (c) were originally enacted in 1990

4    to implement an international treaty, the Biological Weapons Convention of 1972. *See* Biological

5    Weapons Anti-Terrorism Act of 1989, Pub. L. No. 101-298, § 2, 104 Stat. 201 (1990). Section

6    175(b) was added later, as part of the USA PATRIOT Act of 2001. Pub. L. No. 107-56, 115 Stat.

7    272 (2001). Chamberlain asserts that although sections 175(a) and (c) were a valid exercise of

8    Congress's treaty power, section 175(b) is not.

9    The Convention expresses a general goal "to exclude completely the possibility of

10   bacteriological (biological) agents and toxins being used as weapons." Preamble, Convention on

11   the Prohibition of the Development, Production and Stockpiling of Bacteriological (Biological)

12   and Toxin Weapons and on their Destruction, April 10, 1972, 26 U.S.T. 583, 1015 U.N.T.S. 163.

13   To achieve that goal, the Convention requires countries that are parties to the treaty not only to

14   refrain from developing, producing, stockpiling, or otherwise acquiring or retaining biological

15   toxins themselves (except as justified by "prophylactic, protective or other peaceful purposes," *id.*

16   art. I), but also, to "take any necessary measures to prohibit and prevent the development,

17   production, stockpiling, acquisition or retention of . . . [biological] toxins" within each country's

18   "territory, . . . jurisdiction[,] or under its control anywhere." *Id.* art. IV. The Convention thus

19   apparently contemplates that preventing the development, production, stockpiling, acquisition, or

20   retention of biological toxins by private parties as well as by government entities will serve the

21   broader international goal of eliminating the use of such toxins as weapons.

22   Congress could reasonably have concluded section 175(b), like section 175(a), was

23   necessary and proper to effectuate the Convention's requirement that the United States take

24   measures to prohibit and prevent the development, production, stockpiling, acquisition, or

25   retention of biological toxins within its borders. And Congress did not need to cite the Convention

26   in enacting section 175(b), because "[t]he 'question of the constitutionality of action taken by

27   Congress does not depend on recitals of the power which it undertakes to exercise.'" *Nat'l Fed'n*

28   *of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2598 (2012) (quoting *Woods v. Cloyd W. Miller Co.*,

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1   333 U.S. 138, 144 (1948)).  Moreover, it's reasonable to assume Congress intended to act pursuant

2   to its treaty power, since, after all, it was amending a statute that was indisputably an exercise of

3   its power to execute the Convention.  Nor should it matter that section 175(b) was adopted later in

4   time, particularly given the long-term nature of the goals of the Convention.  Overall, given the

5   nexus between the conduct criminalized in section 175(b) and the goals of the Convention,

6   Congress did not exceed its authority in enacting that provision.

### III.

8   "A criminal act committed wholly within a State 'cannot be made an offence against the

9   United States, unless it have some relation to the execution of a power of Congress, or to some

10  matter within the jurisdiction of the United States.'"  *Bond*, 134 S. Ct. at 2086 (quoting *United*

11  *States v. Fox*, 95 U.S. 670, 672 (1878)).  But it remains an open question whether Congress may

12  proscribe purely local conduct in executing its treaty power, or whether doing so would

13  impermissibly intrude on the police power of the states.  *See id.* at 2087, 2089.  Therefore, under

14  *Bond*, absent "a clear indication that Congress meant to reach purely local crimes," courts should

15  interpret criminal statutes enacted pursuant to the treaty power as being limited to addressing only

16  those federal or international dangers that are the objectives of the particular international

17  convention at issue.  *Id.* at 2090; *see id.* at 2090-91.

18  It is possible that sections 175(a) and (b), broadly construed, could be used to prosecute

19  entirely local conduct without a nexus to a federal or international concern, and that such

20  prosecution would raise the unsettled question *Bond* declined to address.  This is not that case:

21  Chamberlain's conduct, as alleged, does not present an "unusual" federal prosecution of a "purely

22  local crime[]."  *Bond*, 134 S. Ct. at 2093, 2090.  The government asserts that Chamberlain

23  possessed between one and two thousand lethal doses of abrin.  The government further notes that

24  the Secretary of Health and Human Services has designated abrin as a toxin with "the potential to

25  pose a severe threat to public health and safety."  42 C.F.R. § 73.3.  And the government alleges

26  that Chamberlain concurrently possessed an improvised explosive device loaded with shrapnel,

27  which, if proven, would support the inference he intended significant harm to a large number of

28  people.  Unlike in *Bond*, where the government prosecuted a woman who used legally obtained,

4

1   common caustic chemicals to cause a minor burn to her husband's lover's thumb, prosecuting

2   Chamberlain for allegedly obtaining a large quantity of abrin is not comparable to treating a "local

3   assault with a chemical irritant as the deployment of a chemical weapon" in international warfare.

4   134 S. Ct. at 2093.  Because "[t]he Federal Government undoubtedly has a substantial interest in

5   enforcing criminal laws against . . . acts with the potential to cause mass suffering," including "the

6   possession of extremely dangerous substances with the potential to cause severe harm to many

7   people," construing sections 175(a) and (b) to reach Chamberlain's conduct as alleged is consistent

8   with *Bond*.  134 S. Ct. at 2092.

9

10   **IT IS SO ORDERED.**

11   Dated: August 27, 2015

12   _____

13   VINCE CHHABRIA
     United States District Judge